# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-0189

Setsuko Daves, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued January 10, 2007                    Decided   March 12, 2007   )

*Daniel G. Krasnegor*, of Washington, D.C., for the appellant.

*Ella Krainsky*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Brian B. Rippel*, Deputy Assistant General Counsel, all of Washington D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and KASOLD and HAGEL, *Judges*.

HAGEL, *Judge*, filed the opinion of the Court.  KASOLD, *Judge*, filed a concurring opinion.

HAGEL, *Judge*: Setsuko Daves, surviving spouse of veteran Gary A. Daves, appeals through counsel an October 4, 2004, decision of the Board of Veterans' Appeals (Board) that (1) denied entitlement to service connection for the cause of Mr. Daves's death, and (2) denied entitlement to dependency and indemnity compensation (DIC) pursuant to 38 U.S.C. § 1318.  For the reasons set forth below, the Board's decision will be vacated and the matter remanded for further adjudication.

## I.  BACKGROUND

Mr. Daves served on active duty in the U.S. Army from April 1971 to September 1978.  He married the appellant, Mrs. Daves, in November 1972.  In May 2002, Mr. Daves was evaluated at the Texoma Medical Center for chest pain.  The medical report stated that the exact cause of his pain was not clear, however, it noted that he had "abnormally high blood sugar" and that "uncontrolled

high blood sugar leads to early heart disease, strokes, nerve damage, eye damage, and kidney damage." Record (R.) at 702. On July 22, 2002, Mr. Daves was found dead in his car at a highway rest stop in Hardeman County, Texas. The car keys were in the ignition in the on position and the responding police officer opined that "the driver knew something was the matter and pulled into the rest stop, parked the vehicle and passed away." R. at 572. The police report indicated that "the blood had pooled to [Mr. Daves's] lower legs and left hand." *Id*. The cause of Mr. Daves's death was described as of "undetermined origin" and the manner of death was described as "natural." R. at 483. No autopsy was performed. At the time of his death, Mr. Daves was service connected for post-traumatic stress disorder at a 70% disability rating; migraine headaches at a 50% disability rating; low-back syndrome at a 10% disability rating; and diabetes mellitus at a 20% disability rating, for a combined rating of 90%, and he had been awarded a rating of total disability based on individual unemployability (TDIU) in September 1997. *See* R. at 480.

In August 2002, Mrs. Daves filed a claim for DIC. In a September 2002 statement in support of claim, she stated her belief that the evidence indicated that her husband suffered from the "debilitating effects of his Diabetes to include cardiovascular involvement," and requested an independent medical opinion. R. at 516. In January 2003, the Secretary requested a VA medical opinion, and asked the examiner to "review the claims file, including the death certificate, incident report, and medical evidence and indicate, if . . . it is as likely as not that one of [Mr. Daves's] service- connected conditions caused or contributed to his death." R. at 576. The examiner was also asked to indicate whether he could not give such an opinion, without resorting to speculation. In January 2003, the examiner opined:

> We have reviewed the C-file, the Death Certificate, and the police report. The cause of death in this patient is unknown, and without an autopsy, cannot even be speculated upon. There is thus no way to say whether or not it was the result of a [service-connected] condition. The death, as described in the police report, is consistent with dozens of different causes both natural and un-natural. The possibilities run the gamut from heart attack, to pulmonary embolus, even poisoning. We thus can only say that there is no evidence to support a relationship of the patient's death to a service connected condition. But there is also no evidence to rule it out. It is simply impossible to say.

R. at 640.

In May 2003, a VA regional office (RO) denied Mrs. Daves's claim for DIC after finding that

"the evidence . . . does not indicate any of [Mr. Daves's] service[-]connected disabilities was of such severity as to cause his death." R. at 657. The RO determined that an independent medical opinion was not warranted because there is "simply no evidence to show what the cause of death may have been." *Id*. In a May 2003 statement in support of claim, Mrs. Daves reiterated her request for an independent medical opinion. A July 2003 Statement of the Case (SOC) again denied service connection for the cause of her husband's death and entitlement to DIC.

She appealed this denial in July 2003, once again asking for an independent medical opinion as to the cause of her husband's death. Mrs. Daves was afforded a Board hearing in April 2004, in which she reiterated that her husband had not been feeling well and had chest pains and high sugar levels in the months before his death, and that a doctor had explained to her that her husband's high blood pressure was due to his diabetes.[1] *See* R. at 722-25. The October 2004 Board decision now on review denied Mrs. Daves's claim for service connection for the cause of her husband's death.

On appeal, Mrs. Daves argues that (1) the Secretary failed in his 38 U.S.C. § 5103A duty to assist by not obtaining an autopsy after the VA medical examiner opined that "without an autopsy, [the cause of Mr. Daves's death] cannot even be speculated upon" (R. at 640), and (2) the Board failed to provide an adequate statement of reasons or bases because it did not "address whether or not the duty to assist included obtaining further medical opinion, including an autopsy report." Appellant's Brief (Br.) at 4-6.

The Secretary argues that he did not have a duty to obtain any further medical review because Mrs. Daves "has not presented competent evidence of a causal relationship between her husband's service[-]connected disabilities and his death." Secretary's Br. at 10. Therefore, the Secretary contends, the duty to assist has been satisfied. The Secretary also points out that obtaining an autopsy several years after Mr. Daves died would include disinterment of his body which, under 38 C.F.R. § 38.621 (2006), requires a request to be submitted by the family and would have to be accomplished without expense to the Government; the Secretary further notes that Mrs. Daves has

---

[1] *See* VA ADJUDICATION PROCEDURE MANUAL (M21-1), pt. VI, para. 11.28(b)(1) (2005) (providing that the complications of diabetes mellitus include "arteriosclerosis, including peripheral or cardiac complications" and hypertension); DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 506, 889 (30th ed. 2003) (stating that diabetes mellitus can lead to "premature atherosclerosis with myocardial infarction or stroke syndrome" and defining hypertension as "high arterial blood pressure").

not undertaken any effort to seek disinterment. Additionally, the Secretary argues that, even after disinterment, the Secretary cannot order an autopsy because an autopsy must be ordered by the justice of the peace of the Texas county where Mr. Daves died.

The Secretary contends that the Board's statement of reasons or bases is adequate because it fully discusses the Secretary's duty to assist and explains that the Secretary fulfilled this duty by obtaining a medical opinion. The Secretary further argues that, because Mrs. Daves did not initiate efforts to disinter the body or provide evidence to suggest that an autopsy was necessary or even possible, the Secretary was under no duty to consider further action and the Board was not required to provide a statement of reasons or bases for why it did not request an autopsy. *See* Secretary's Br. at 16.

In reply, Mrs. Daves argues that she has not undertaken any effort to disinter the body because the Secretary has not agreed to conduct an autopsy and that it would be illogical for her to begin the process of disinterment in anticipation of VA's agreeing to do so. It is unclear exactly what expenses are associated with the disinterment and autopsy of Mr. Daves; however, Mrs. Daves states that she "understands that it is her responsibility to ensure that the proper steps are taken to obtain consent and to pay for the disinterment." Appellant's Reply Br. at 3. At oral argument, Mrs. Daves's counsel argued that, because the Secretary had a duty under 38 U.S.C. § 5103A(d) to provide a medical opinion regarding the cause of Mr. Daves's death, and because a VA medical opinion stated that such an opinion could not be rendered without an autopsy, the Secretary was required to provide one.

## II. APPLICABLE LAW

### A. Duty to Assist

The Secretary has a general duty to "make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim." 38 U.S.C. § 5103A(a); *see* 38 C.F.R. § 3.159(c) (2006) (noting same); *Littke v. Derwinski*, 1 Vet.App. 90, 92 (1990) (holding that the Secretary is required to assist a claimant in "developing pertinent evidence, from whatever source"). However, he is not required to provide assistance to a claimant "if no reasonable possibility exists that such assistance would aid in substantiating the claim." 38 U.S.C. § 5103A(a)(2). In fulfilling

4

his general duty to assist he may provide any assistance that he "considers appropriate."  38 U.S.C. § 5103A(g).

Moreover, in disability compensation claims, the Secretary *must* provide a medical examination or opinion if there is competent evidence of a current disability, an indication that the disability may be associated with service, and insufficient medical evidence to render a decision on the claim.  *See* 38 U.S.C. § 5103A(d); *see also McLendon v. Nicholson*, 20 Vet.App. 79, 81 (2006) (analyzing requirements of section 5103A(d)); *Wells v. Principi*, 326 F.3d 1381, 1384 (Fed. Cir. 2003).  If the examination report does not contain sufficient detail, "it is incumbent upon the rating board to return the report as inadequate for evaluation purposes."  38 C.F.R. § 4.2 (2006); *see Bowling v. Principi*, 15 Vet.App. 1, 12 (2001) (finding that under 38 C.F.R. §§ 4.2 and 19.9(a), upon assessing medical reports, "[i]f further evidence [or] clarification of the evidence . . . is essential for a proper appellate decision," the Board should remand the case to the RO); *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994) (stating that an inadequate examination frustrates judicial review).

The Board's determination that the Secretary has fulfilled his duty to assist generally is a finding of fact that the Court reviews under the "clearly erroneous" standard set forth in 38 U.S.C. § 7261(a)(4).  *See Nolen v. Gober*, 14 Vet.App. 183, 184 (2000).  "'A finding of fact is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  The Board's ultimate conclusion on whether a medical examination or opinion is required by 38 U.S.C. § 5103A(d)(2) "is reviewed under the 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' standard of review."  *McLendon*, 20 Vet.App. at 81.  *See* 38 U.S.C. § 7261(a)(3)(A) (stating that the Court shall hold unlawful decisions by the Board that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

### B.  Reasons or Bases

Decisions of the Board shall be based on all applicable provisions of law and regulation and the Board shall provide a written statement of reasons or bases for its conclusions.  *See* 38 U.S.C. § 7104(a), (d)(1).  The Board is not required to discuss all of the evidence of record, *see Dela Cruz v. Principi*, 15 Vet.App. 143, 149 (2001), but it cannot reject evidence favorable to the claimant

without discussing that evidence, *see Meyer v. Brown,* 9 Vet.App. 425, 433 (1996), and its overall statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court." *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *see Gilbert*, 1 Vet.App. at 56-57. A remand of the matter for further adjudication generally is appropriate when the statement of reasons or bases is inadequate, *see Tucker v. West*, 11 Vet.App. 369, 374 (1998), unless it "would result in this Court's unnecessarily imposing additional burdens on the [Board and the Secretary] with no benefit flowing to the veteran." *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991).

### III. ANALYSIS

In the instant case, the Board's statement of reasons or bases concerning the Secretary's duty to assist does not permit proper review. In January 2003, the Secretary attempted to assist Mrs. Daves in substantiating her claim by seeking a medical opinion regarding the cause of death. However, the medical reviewer stated that "without an autopsy, [Mr. Daves's cause of death] cannot even be speculated upon." R. at 640. This statement could be read to mean either (1) an autopsy conducted shortly after Mr. Daves's death was needed to make a determination and therefore the examiner could not ever opine as to the cause of death, or (2) the examiner could opine regarding the cause of Mr. Daves's death if an autopsy were conducted. The Board did not seek to clarify these possibilities. *See* 38 C.F.R. § 4.2; *see also Bowling* and *Ardison*, both *supra*. Indeed, the Board never discussed the need for an autopsy or whether a post-burial autopsy would be helpful to the medical reviewer, nor did it address whether an autopsy falls under the purview of the Secretary's section 5103A duty to assist.

When the Secretary's duty to provide a medical examination is triggered, this duty includes the requirement that the Secretary provide reasonable tests and other examinations necessary to render a meaningful medical opinion. *See Green v. Derwinski*, 1 Vet.App. 121, 123-124 (1991). Where, as here, the medical examiner specifically states that a medical opinion cannot be provided without information not currently available, the Secretary's duty to assist requires that the Secretary determine whether that information may be reasonably obtained, and if so, to make efforts to obtain

6

it and seek an additional medical opinion which considers the relevant information. *See Green,* 1 Vet.App. at 123-24.

Here, the Board failed to address whether an autopsy to determine the cause of death could be reasonably obtained or whether an autopsy would even be helpful in this case. Because the Board relied on the January 2003 medical examination without addressing the examiner's statement that an autopsy was necessary to determine Mr. Daves's cause of death, the Court cannot determine whether, as the Secretary argues, there is no duty to provide an autopsy in this case.

Additionally, the record does not reveal that Mrs. Daves was ever informed that, because no autopsy had been performed, the Secretary was unable to procure a medical opinion as to cause of death. Communication between VA and a claimant is a critical component of the adjudication process. *See Dingess v. Nicholson*, 19 Vet.App. 473, 491 (2006). Here, both the May 2003 RO decision and the July 2003 SOC state that an autopsy had not been performed. However, neither decision specifically states that the ability of the medical reviewer to provide an opinion on the cause of Mr. Daves's death was impeded by this lack of an autopsy. *See* 38 C.F.R. § 3.103(b). Due process requires the Secretary to notify the claimant prior to the adjudication of the claim of the Secretary's inability to obtain evidence that the Secretary has undertaken to obtain, so that the claimant has a fair and reasonable opportunity to try and secure it or procure alternative evidence at a time when such information will be most useful to the adjudicator. *See Prickett v. Nicholson*, 20 Vet.App. 370, 381 (2006) ("[W]here an applicable statute or regulation is silent as to whether a particular procedural process is required, such process may be implicitly required when 'viewed against [the] underlying concepts of procedural regularity and basic fair play' of the VA benefits adjudicatory system." (quoting *Thurber v. Brown*, 5 Vet.App. 119, 123 (1993), and *Gonzalez v. United States*, 348 U.S. 407, 412 (1955))).

Further, the Board's statement of reasons or bases regarding its assessment of the January 2003 VA medical opinion is confusing. For example, although this medical opinion is deemed speculative by the Board and considered "non-evidence," the Board also concludes that this medical opinion was the "only medical evidence of record that bears directly on the question of what constituted the cause" of Mr. Daves's death. R. at 16-17. There is no explanation of how the medical opinion can be viewed as both non-evidence and the only medical evidence of record.

Finally, the Board inadequately explains its conclusion "that a preponderance of the evidence of record in this case is against a finding that the cause of [Mr. Daves's] death was incurred in service or is otherwise related thereto" (R. at 17), when, as the medical reviewer opined, "there is no evidence to support a relationship of the patient's death to a service[-]connected condition. But there is also no evidence to rule it out. It is simply impossible to say." R. at 640. *See also* 38 U.S.C. § 5107(b) ("When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant."); 38 C.F.R. § 3.102 (2006) (providing that reasonable doubt will be resolved in favor of the claimant); c*f. Mittleider v. West*, 11 Vet.App. 181, 182 (1998) (requiring the Board to discuss the applicability of 38 C.F.R. § 3.102 and VA's own interpretation of the regulations set forth at 61 Fed.Reg. 52,698 (Oct. 8, 1996) that, when effects of service-connected and non-service-connected disabilities cannot be separated, reasonable doubt requires that the signs and symptoms should be attributed to the service-connected disabilities). In sum, the Board's statement of reasons or bases is neither helpful to Mrs. Daves nor facilitative of review; remand is appropriate. *See Allday, Gilbert*, and *Tucker*, all *supra*.

## IV. CONCLUSION

Accordingly, the Board's October 4, 2004, decision is VACATED and the matter is REMANDED for further adjudication. On remand, Mrs. Daves may present additional evidence and argument in support of the matter remanded, and the Board must consider any evidence and argument so presented. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The matter is to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112.

KASOLD, *Judge*, concurring: Although I concur in the majority's decision that remand is appropriate because the Board's statement of reasons or bases is inadequate, I write separately to expand upon an issue that is not fully discussed here and that should be addressed on remand. Although Mrs. Daves argues that the Secretary had a duty under 38 U.S.C. § 5103A(d) to provide a medical opinion regarding the cause of her husband's death, she provides no authority for her proposition that section 5103A(d), which explicitly applies to disability compensation claims, also

8

applies to DIC claims. The Secretary does not concede that section 5103A(d) is applicable to DIC claims and has requested permission to submit supplemental briefing on the issue should it be determinative in this case. Given the posture of the case, such briefing is not now warranted.

Nevertheless, the significance of this issue cannot be overstated. Should it be determined that an autopsy reasonably would assist a medical professional in opining as to the cause of the death of Mr. Daves, any duty to secure an autopsy may vary depending on whether the January 2003 medical opinion was sought by the Secretary pursuant to the section 5103A(d) mandatory duty to provide a medical opinion in disability compensation claims, or whether it was sought pursuant to the Secretary's general duty to undertake "reasonable efforts to assist" under section 5103A(a) and his discretionary duty to provide any assistance he considers appropriate under 5103A(g).

Otherwise stated, the effort required to be undertaken to assist in securing a medical opinion or examination that is required to be provided by law may differ from that which is required when the medical opinion or examination is being sought as a matter of discretionary assistance. *Compare* 38 U.S.C. § 5103A(d) (providing that the Secretary "shall" secure a medical opinion or examination when certain criteria are met) *with* 38 U.S.C. § 5103A(a) (providing that the Secretary "shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate" the claim) *and* 38 U.S.C. § 5103A(g) (providing that the Secretary is not precluded by anything in section 5103A from providing any assistance in substantiating a claim that he "considers appropriate"); *see also Green v. Derwinski*, 1 Vet.App. 121, 123-24 (1991) ("It is equally impossible to square the Secretary's duty to assist a claimant . . . with the Department of Veterans Affairs' (VA) failure to follow up the suggestion by the examining physician that a review of the veteran's records 'might help clarify the diagnostic doubt' and that additional diagnostic studies might be in order if such doubt remains."). The Board's statement of reasons or bases does not address this issue; for this reason, as well as those more fully articulated in the opinion of the Court, remand is appropriate.