LANCE, Judge,
concurring:
Although I agree with the result reached by my colleagues, I am compelled to write separately because the issues involved arise so frequently as to justify additional clarification. First, issues of witness credibility and competence are among the most common raised to us and the distinctions between various cases are often misunderstood or overlooked. Second, the proper relationship between the Board and VA medical experts is also an area beset with confusion. This case presents an ideal fact pattern to do more than simply state what the Board did wrong. Accordingly, I must address in greater detail how the Board should approach these issues so that it may clearly articulate its analysis on these issues in the future.
I. THE RELATIONSHIP BETWEEN COMPETENCE AND CREDIBILITY
The first common issue that this case demonstrates is the often blurred line between competence and credibility in the assignment of weight to lay testimony.

1. Lay Competence

In general, neither lay witnesses nor members of the Board are medical experts. Thus, the beliefs of lay witnesses (including claimants) on issues of diagnosis and medical causation are not competent evidence in situations where those issues require medical expertise to resolve. Compare Jandreau v. Nicholson, 492 F.3d 1372, 1377 n. 4 (Fed.Cir.2007) (noting that a layperson is not “competent” to diagnose a form of cancer), with Barr v. Nicholson, 21 Vet.App. 303, 309 (2007) (holding that a layperson is competent to diagnose varicose veins). Similarly, in Colvin v. Der-winski, the Court held that the Board “must consider only independent medical evidence to support [its] findings rather than provide [its] own medical judgment in the guise of a Board opinion.” 1 Vet.App. 171, 175 (1991); see also Maxson v. Gober, 230 F.3d 1330, 1333 (Fed.Cir.2000) (holding that the Board is competent to consider “evidence of a prolonged period without medical complaint, along with other factors” in determining that a condition was not aggravated by service). The question of whether a particular medical issue is beyond the competence of a layperson— including both claimants and Board members — must be determined on a case-by-case basis. Jandreau, 492 F.3d at 1377. Simply put, any given medical issue is either simple enough to be within the realm of common knowledge for lay claimants and adjudicators or complex enough to require an expert opinion.
However, I would reiterate that even if a layperson is not competent to diagnose or determine the cause of a particular condition, lay evidence is still competent to establish the occurrence of observable events and medical symptoms. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed.Cir.2009). Accordingly, the Board should avoid overbroad statements about the competence of laypersons and should carefully distinguish its treatment of lay testimony of symptoms and its analysis of lay competence on issues of diagnosis or causation. Board decisions that make blanket statements about lay competence while failing to acknowledge and discuss the competent lay testimony of observable symptoms will face a rocky road on appeal.
*439 More importantly, even if the Board acts properly in denying a claim, it must clearly communicate the basis of the denial so that the claimant and future regional office adjudicators will understand what types of evidence must be submitted in order to reopen the claim. See Kent v. Nicholson, 20 Vet.App. 1, 9-11 (2006). Simply denying the claim with a terse sentence that the lay evidence is not competent to establish the nature or origin of the claimant’s disability will often leave it unclear whether the Board is accepting the claimant’s account of what happened in service or what post service symptomatology was observed. In such cases, a remand will often serve to illuminate the basis of the decision not only to inform the claimant and the Court, but to ensure that a future attempt to reopen the claim can be properly adjudicated.

2. Credibility

Even where there are no competence issues, the value of medical evidence and opinions will frequently turn on the credibility of lay testimony. A medical opinion based upon an incorrect factual premise is of no probative value.[8] See Reonal v. Brown, 5 Vet.App. 458, 461 (1993). Thus, the Board, in its role as factfinder, “is obligated to, and fully justified in, determining whether lay evidence is credible in and of itself.” Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed.Cir.2006).
In determining whether lay evidence is credible, the Board must frequently consider whether there is corroborating evidence that supports the witness’s account or suggests that the witness may be untruthful or mistaken. In doing so, the Board must distinguish between two distinct situations. In some cases, there is a complete absence of any evidence to corroborate or contradict the testimony, while in other cases there is evidence that is relevant either because it speaks directly to the issue or allows a reasonable inference to be drawn by the Board as factfin-der.
In general, the Board cannot determine that a veteran’s lay evidence lacks credibility solely because it is not corroborated by contemporaneous medical records. Buchanan, 451 F.3d at 1336. In cases involving disabilities related to combat, VA must presume lay evidence that describes the in-service disease or injury is credible so long as it is “consistent with the circumstance, conditions, or hardships of such service, notwithstanding the fact that there is no official record.” 38 U.S.C. § 1154(b). This presumption is rebuttable only by clear and convincing evidence. Collette v. Brown, 82 F.3d 389, 393 (Fed.Cir.1996). However, “the lack of contemporaneous medical records may be a fact that the Board can consider and weigh against a veteran’s lay evidence,” when such consideration is not prohibited by 38 U.S.C. § 1154(b). Buchanan, 451 F.3d at 1336.
There is a wide variety of evidence that may corroborate or contradict a lay witness’s testimony, including prior consistent statements of the witness, prior inconsistent statements of the witness, and current medical evidence, such as an x-ray showing *440 the veteran has a healed fracture in the allegedly injured area. Of course, this list is by no means exclusive. Cf. Stefl v. Nicholson, 21 Vet.App. 120, 124 (2007) (providing a nonexclusive list of factors a physician may discuss to support an opinion).
One type of evidence that often causes confusion is contemporaneous SMRs that do not record the alleged in-service disease or injury. As discussed above, in cases involving combat, VA is prohibited from drawing an inference from silence in the SMRs. However, in cases where the inference is not prohibited, the Board may use silence in the SMRs as contradictory evidence only if the alleged injury, disease, or related symptoms would ordinarily have been recorded in the SMRs. See Buczynski v. Shinseki, 24 Vet.App. 221, 225-26 (2011) (noting that the Board could not rely on silence in medical records to conclude that the appellant’s injury was not “exceptionally repugnant” because there was no medical reason for the examiner to address that subjective conclusion); Fed.R.Evid. 803(7) (the absence of an entry in a record may be evidence against the existence of a fact if such a fact would ordinarily be recorded).
In order to rely on this inference, the Board must make two findings. First, the Board must find that the SMRs appear to be complete, at least in relevant part. If the SMRs are not complete in relevant part, then silence in the SMRs is merely the absence of evidence and not substantive negative evidence. See McLendon, 20 Vet.App. at 85. If the SMRs are complete in relevant part, then the Board must find that injury, disease, or related symptoms would ordinarily have been recorded had they occurred. In making this determination, the Board may be required to consider the limits of its own competence on medical issues. For example, the Board may reasonably conclude that a compound fracture of a bone would have been observed and recorded, but would require medical evidence to determine whether a particular type of cancer would have manifested observable symptoms in service that likely would have been reported and recorded. Cf. Jandreau, 492 F.3d at 1377 n. 4 (noting that a layperson is competent to identify a broken leg, but not a form of cancer).

3. Application

In this case, the Board rejected the appellant’s lay statements based both on competence and credibility. The Board determined that the nature and origin of the appellant’s knee injury were medical issues beyond his competence. R. at 16. As to credibility, the Board stated:
Given that a right ACL tear is quite a significant injury, one would expect to see at least some documentation of it in the [SMRs], Also, one would expect that the [appellant] would have mentioned this right knee injury on his report of medical history at separation!,] but instead this document shows only that the [appellant] reported two separate injuries to the left knee. In addition!,] the Board notes that when the [appellant] initially filed his claim, he did not allege a right knee injury in service. Instead he alleged only that he incurred a left knee injury and that his right knee disability was secondary to that injury. The [appellant] then made similar contentions in his Notice of Disagreement. For all of these reasons, the Board does not find his more recent assertions of right knee injury in service credible.
R. at 15.
The flaw in the in Board’s analysis is apparent. Although it concluded that the appellant was not competent as a layperson to provide a medical opinion as to his ACL injury, the Board relied upon its own lay opinion about the nature of the ACL injury to determine that it was a “signifi *441 cant injury” that would have been documented in the SMRs. The Board cannot have it both ways. Either this type of injury is relatively simple and within the common knowledge of a layperson or it is complex enough that expert opinion or treatise evidence is required to understand its origins, progression, and symptoms.
Based upon the development of the record so far, the ACL injury here appears to fall clearly on the side of being medically complex. The record is devoid of any medical evidence establishing the common symptomatology and usual treatment of an ACL injury. The record does contain a May 16, 1978, clinical record, which reported “effusion sighted r[ight] patella” and increased pain on palpation and on leg lift of the medial and lateral meniscus regions and a limited range of motion. R. at 634. It also contains the appellant’s testimony that he was seen at a clinic for a right knee injury during service and was told that he had sustained only a sprain. R. at 58. It is not apparent whether the clinical record can be evidence of an ACL injury in service or whether such an injury might have been misdiagnosed as a sprain. It is also not clear whether the appellant’s symptoms in service would have been of such severity that he would have likely reported them during his separation examination, particularly if they had been inaccurately attributed to a sprain instead of a more severe ACL injury. Therefore, I agree with the appellant’s argument that the Board violated the Court’s holding in Colvin, supra, in finding that some documentation in his SMRs is expected as the Board is not competent to make this determination based solely on its own medical beliefs.
II. THE RELATIONSHIP BETWEEN THE BOARD AND VA MEDICAL EXPERTS
The second common issue that this case presents is the delicate balance between the Board’s primacy as a factfinder and its obligation to seek expert assistance in resolving complex medical issues when appropriate.
In evaluating disability claims, the Board is obliged to reject insufficiently detailed medical reports. 38 C.F.R. § 4.2 (2010) (“If a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes.”). A medical opinion is adequate “where it is based on consideration of the veteran’s prior medical history and examinations and also describes the disability, if any, in sufficient detail so that the Board’s ‘evaluation of the claimed disability will be a fully informed one.’” Stefl, 21 Vet.App. at 123 (quoting Ardison v. Brown, 6 Vet.App. 405, 407 (1994)). It necessarily follows that the Board has an obligation to reject medical opinions that are based upon an inaccurate factual premise. See Reonal, supra.
Although the basic requirement to obtain a detailed medical opinion based upon an accurate factual premise is straightforward in principle, this case demonstrates the types of chicken-or-egg problems that frequently arise in a system where adjudicators and experts do not converse directly. I agree with my colleagues that the request for a medical opinion in this case violated Austin. The request in this case was unequivocal in stating that there was no right knee injury during service. This statement makes the case at hand much like Austin, where VA made an explicit statement of fact to an examiner that a reasonable physician would likely understand as a necessary premise of the opinion being requested. As noted by the majority’s opinion, the statement directly *442 contradicted the findings of the VA examiner in her initial December 2008 opinion and in the subsequent March 2009 opinion, the examiner found that the appellant’s right knee injury was not related to service. R. at 49. In particular, her conclusion focused on whether the appellant’s ACL injury was secondary to his left knee condition and concluded that it was not related because it was a traumatic injury and not an overuse injury. Id. The opinion does not address whether a traumatic injury to the right knee occurred and the reader is left unsure whether the examiner revised her opinion based on additional evidence she reviewed or because she felt bound by the Board’s apparent finding against her earlier conclusion. Therefore, regardless of the intent of the request, the Board’s categorical statement must be read as limiting the scope of the medical opinion, which had the result of violating Austin under the facts of this case.
In this case, the opinion should have asked the physician whether there was any medical reason to accept or reject the proposition that the appellant had a right knee ACL injury that could have lead to his current condition. Cf. Daves v. Nicholson, 21 Vet.App. 46, 51-52 (2007) (where an examiner states that additional information may help resolve a disputed medical issue, the Secretary’s duty to assist requires the Secretary to determine whether that information can be reasonably obtained). The opinion could have specifically asked what types of symptoms would have been caused by the type of ACL injury at issue and whether such an injury could have been mistaken for a sprain or otherwise gone undiagnosed during service. Had it done so, perhaps this remand could have been avoided.
Nonetheless, I think it is vital to stress that in many cases it is perfectly appropriate for a request for a medical opinion to define the facts that a medical examiner must accept are true. Factfinding is a responsibility that is ultimately committed to the Board and not the VA medical examiner. See Washington v. Nicholson, 19 Vet.App. 362, 367-68 (2005) (it is Board’s duty to determine probative weight of evidence). As mentioned earlier, where the duty to provide a medical opinion applies, the Board must obtain an opinion that is based upon the factual predicate that it finds to be true. In some cases, a medical opinion may help resolve certain kinds of disputed issues of fact, such as whether a particular injury occurred in service or the precise nature of an intervening injury after service. As a result, in many cases, it may make sense for the Board to make specific findings before remanding a matter and require a medical opinion to accept those findings as true. In other cases, it is better for the Board to note that it needs to resolve a component factual question and then to ask the physician to include in the report an opinion as to whether there is any medical reason to accept or reject the veteran’s testimony as to what occurred in the past. When the Board seeks such an opinion, the examiner should explicitly address the issue, even if only to state that there is no medical evidence that either supports or contradicts the lay testimony. Cf. Jones v. Shinseki, 23 Vet.App. 382, 390-91 (2010) (concluding that a medical examiner may report that an issue of medical causation cannot be resolved without resorting to speculation if that conclusion is adequately explained).
Unfortunately, it is not always easy at the outset of a claim to identify all potential theories of entitlement that have been raised or all the facts that must be determined to adequately resolve each theory. Unlike a courtroom setting where a skilled advocate can respond to an expert’s testimony and methodically work through all the issues that arise, VA’s system for ob- *443 taming expert medical opinions through regional offices by written request means that developing evidence in a complex case can be a piecemeal process. See Disabled Am. Veterans v. Sec’y of Veterans Affairs, 327 F.3d 1339, 1346-48 (Fed.Cir.2003) (invalidating VA’s proposal to allow the Board to develop new evidence because it would violate claimant’s right to one review on appeal). In many complex cases, the understanding of both the medical expert and the Board will evolve through multiple cycles of requests and opinions, which may or may not be accompanied by additional development of other evidence. However, I would note that the number of iterations required to cover all the issues can be substantially reduced if adjudicators are explicit as to whether any underlying facts are in dispute at any given point and if medical experts are explicit in stating how and why they are resolving any disputes as to the underlying facts. Although this may take extra effort initially, in the long run it will reduce the burden of avoidable remands that VA too frequently inflicts upon itself and provide faster, clearer decisions to claimants that have too often been waiting for many years for resolution of their claims.

. I would note that an opinion based upon an incorrect factual premise is not the same as an opinion based upon an incomplete factual premise. The Board may assign a lesser evi-dentiary value to an opinion that is lacking in detail. Nieves-Rodriguez v. Peake, 22 Vet.App. 295, 302 (2008). However, the Board may not assume that additional information would necessarily change an expert's opinion unless the issue falls within the competence of a layperson. Thus, an opinion that lacks details may trigger the duty to assist by indicating that a condition may be related to service, McLendon v. Nicholson, 20 Vet.App. 79, 83-84 (2006), and may lend some evidentiary support to other opinions — favorable or unfavorable to the claim — that reach the same conclusion. Nieves-Rodriguez, supra.