Citation Nr: 1706056 
Decision Date: 02/28/17 Archive Date: 03/03/17

DOCKET NO. 07-17 966 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for a gastrointestinal disorder, to include as secondary to a service-connected disability.

2. Entitlement to service connection for a disability manifested by fatigue and joint and muscle pain, to include as due to an undiagnosed illness. 

3. Entitlement to service connection for a disability manifested by fatigue, to
include as due to an undiagnosed illness.

4. Entitlement to a rating in excess of 20 percent for chondromalacia of the patellofemoral joint, left knee.

5. Entitlement to a total disability rating based on unemployability (TDIU).


REPRESENTATION

Veteran represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

Jennifer R. White, Counsel


INTRODUCTION

The Veteran served on active duty from March to June 1987 and from January 1988 to April 1992. He served in Southwest Asia from August 1991 to March 1992.

These matters initially came before the Board of Veterans' Appeals (Board) from multiple rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) St. Petersburg, Florida. 

In regards to the Veteran's increased rating claim, in September 2011, the Board determined that the reduction in the disability rating for chondromalacia of the patellofemoral joint of the left knee from 20 percent to 10 percent was proper and denied entitlement to a rating in excess of 10 percent for the very same disability. The Veteran appealed the Board's denials to the United States Court of Appeals for Veterans Claims (Court).

In a March 2013 memorandum decision, the Court vacated the Board's September 2011 decision, reversed the Board's determination that the reduction in the disability rating for the Veteran's service-connected left knee disability was proper, and remanded the case for restoration of the 20 percent rating for that disability (effective on the date of the reduction) and for readjudication of the Veteran's increased rating claim. 

In November 2013, the Board remanded the issue of entitlement to a rating in excess of 20 percent for a left knee disability as well as entitlement to service connection for a gastrointestinal disability and entitlement to service connection for a disability manifested by fatigue and generalized muscle and join pain, to include as due to an undiagnosed illness for a Board hearing.

This hearing was conducted at the RO by the undersigned Veterans Law Judge in August 2014. A transcript of this hearing has been associated with the Veteran's claims file.

The issue of entitlement to service connection for T-cell lymphoblastic lymphoma was granted by the Board in April 2016. The remaining issues, as indicated on the title page herein with the exception of TDIU, were remanded. The Board notes that the issue of entitlement to service connection for a disability manifested by fatigue, to include as due to an undiagnosed illness, was not indicated on the April 2016 remand cover page. The Board finds that this was mistaken as there is no indication of this condition being granted or withdrawn. Thus, the issues on appeal are those indicated on the title page herein.

The United States Court of Appeals for Veterans Claims (Court) holds that a TDIU claim is part and parcel of an initial or increased rating claim when raised by the record. Mayhue v. Shinseki, 24 Vet. App. 273 (2011); Rice v. Shinseki, 22 Vet. App. 447 (2009). In other words, the Board has jurisdiction to consider the Veteran's possible entitlement to a TDIU rating when this issue is raised by assertion or reasonably indicated by the evidence and is predicated at least in part on the severity of the service-connected disability in question, regardless of whether the RO has expressly addressed this additional issue. See VAOPGCPREC 6-96 (Aug. 16, 1996). See also Caffrey v. Brown, 6 Vet. App. 377 (1994); Fanning v. Brown, 4 Vet. App. 225, 229 (1993); EF v. Derwinski, 1 Vet. App. 324 (1991). In this case, the Veteran asserted in a January 2017 VA Form 21-526EZ that he is unemployable due to his service-connected disabilities. In light of this evidence, the Board finds that the issue of TDIU is reasonably raised by the record and as the RO had not yet considered the issue, the Board assumes jurisdiction of it.

The issues of entitlement to service connection for a gastrointestinal disorder; entitlement to service connection for a disability manifested by fatigue and joint and muscle pain, to include as due to an undiagnosed illness; and entitlement to a rating in-excess of 20 percent for chondromalacia of the patellofemoral joint, left knee are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The Veteran's service-connected disabilities render him unable to secure or follow a substantially gainful occupation.


CONCLUSION OF LAW

The criteria for a TDIU are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.341, 4.3, 4.16, 4.18 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

VCAA

The Board notes that the Veteran has been provided all required notice and that the evidence currently of record is sufficient to substantiate his claim for entitlement to a TDIU. Therefore, no further development with respect to the matter decided herein is required under 38 U.S.C.A. §§ 5103, 5103A (West 2014) or 38 C.F.R. § 3.159 (2016).


Regulations and Analysis

Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340 (2016). If the total rating is based on a disability or combination of disabilities for which the Schedule for Rating Disabilities provides an evaluation of less than 100 percent, it must be determined that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age. 38 C.F.R. § 3.341 (2016). In evaluating total disability, full consideration must be given to unusual physical or mental effects in individual cases, to peculiar effects of occupational activities, to defects in physical or mental endowment preventing the usual amount of success in overcoming the handicap of disability and to the effects of combinations of disability. 38 C.F.R. § 4.15 (2016).

If the schedular rating is less than total, a total disability evaluation can be assigned based on individual unemployability if the veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disability, provided that he has one service-connected disability rated at 60 percent or higher; or two or more service-connected disabilities, with one disability rated at 40 percent or higher and the combined rating is 70 percent or higher. The existence or degree of nonservice-connected disabilities will be disregarded if the above-stated percentage requirements are met and the evaluator determines that the service-connected disabilities render him incapable of substantial gainful employment. 38 C.F.R. § 4.16(a) (2016).

If the veteran's service-connected disabilities meet the percentage requirements of 38 C.F.R. § 4.16(a), and the evidence of record indicates that he is unable to maintain substantially gainful employment due to his service-connected disabilities, his claim for a total disability rating based on unemployability cannot be denied in the absence of medical evidence showing that he is capable of substantially gainful employment. See Friscia v. Brown, 7 Vet. App. 294 (1994).

In this case, the Veteran is currently service-connected for Posttraumatic Stress Disorder (PTSD) as 50 percent disabling; T-Cell Lymphoma as 30 percent disabling; a left knee disability at 20 percent disabling; a left hip disability as 10 percent disabling; and a right hip disability as 10 percent disabling. His overall current disability rating is 80 percent. Thus, he meets the specific percentage requirements of 38 C.F.R. § 4.16(a). The Board will next consider whether the Veteran is unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities.

In January 2017, the Veteran submitted a claim for entitlement to a TDIU with medical documentation. A letter from Florida Orthopedic Associates indicates that the Veteran's knee disability results in pain, popping and swelling and that he is at high risk for total hip arthroplasty and a total knee replacement. He is unable to stand for any length of time. An opinion from The Orthopedic Institute indicates that the effects of chemotherapy can be life long and that the Veteran is 100 percent disabled and unable to be gainfully employed. A March 2015 letter from Halifax Health indicates that the Veteran is totally disabled due to difficult and painful ambulation due to avascular necrosis of the bilateral hips; memory loss due to chemotherapy; PTSD; and chronic knee pain. A letter December 2016 from Halifax Health discusses the Veteran's compromised immune system, memory loss and cardiac issues from chemotherapy; indicating that the Veteran is totally disabled and unable to perform any gainful employment.

The Board finds that the description provided concerning the severity of the Veteran's service-connected disabilities, as described in the record, warrants entitlement to TDIU. 


ORDER

Entitlement to a total disability rating based on individual unemployability is granted, subject to the regulations applicable to the payment of monetary benefits.


REMAND

Unfortunately, an additional remand is necessary in this case. 

I. Gastrointestinal Disorder

At the August 2014 Board hearing, the Veteran testified that he suffers from gastrointestinal problems, including gastroparesis, caused by treatment for T-cell lymphoblastic lymphoma, including chemotherapy. The medical evidence of record indicates that the Veteran suffered from gastrointestinal problems around the time of his treatment for T-cell lymphoblastic lymphoma.

VA is obliged to provide an examination when the record contains competent evidence that the claimant has a current disability or signs and symptoms of a current disability, the record indicates that the disability or signs and symptoms of disability may be associated with active service; and the record does not contain sufficient information to make a decision on the claim. 38 U.S.C.A. § 5103A (d) (West 2014). The evidence of a link between current disability and service must be competent. Wells v. Principi, 326 F.3d 1381 (Fed. Cir. 2003). The threshold for getting an examination under the VCAA is low. McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). As the Veteran is service-connected for T-cell lymphoblastic lymphoma and the evidence of record suggests treatment for this may have caused or resulted in a gastrointestinal disorder, the Board remanded to obtain a VA examination to address the possible relationship. The subsequent June 2016 VA examination indicates that the Veteran's GERD pre-existed his treatment for T-cell lymphoblastic; however, the examiner did not consider all of the Veteran's gastrointestinal diagnoses. Thus, the AOJ must obtain an additional opinion concerning the Veteran's gastroparesis. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (noting that once the Secretary undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, he must provide an adequate one); see also Daves v. Nicholson, 21 Vet. App. 46, 51 (2007), citing Green v. Derwinski, 1 Vet. App. 121, 123-124 (1991); Bowling v. Principi, 15 Vet. App. 1, 12 (2001) (emphasizing the Board's duty to return an inadequate examination report "if further evidence or clarification of the evidence ... is essential for a proper appellate decision"); see also 38 C.F.R. § 4.2 (2016) (noting that if the examination report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes). 

 II. Disability Manifested by Fatigue and Joint and Muscle Pain

Additionally, the Veteran claims entitlement to a disability manifested by fatigue and joint and muscle pain, to include as due to an undiagnosed illness. The Veteran testified that he has suffered from fatigue as well as joint and muscle pain since approximately 2002. The Veteran contends this reveals an undiagnosed illness, manifested by fatigue and joint and muscle pain, caused by exposure to environmental hazards while on active duty in Southwest Asia. 

The Veteran's service personnel records show active military service in the Southwest Asia Theater of Operations during the Persian Gulf War making him a "Persian Gulf Veteran." See 38 U.S.C.A. § 1117; 38 C.F.R. § 3.317. 

Under 38 C.F.R. § 3.317, service connection may be established for a Persian Gulf Veteran who exhibits objective indications of a qualifying chronic disability that became manifest during active military, naval, or air service in the Southwest Asia Theater of operations during the Persian Gulf War or to a degree of 10 percent or more not later than December 31, 2016. 38 U.S.C.A. § 1117 (a)(1); 38 C.F.R. § 3.317 (a)(1) (2016).

For purposes of 38 C.F.R. § 3.317, there are three types of qualifying chronic disabilities: (1) an undiagnosed illness; (2) a medically unexplained chronic multi symptom illness; and (3) a diagnosed illness that the Secretary determines in regulations prescribed under 38 U.S.C.A 1117 (d) warrants a presumption of service connection.

Compensation may be paid under 38 C.F.R. § 3.317 for disability which cannot, based on the facts of the particular Veteran's case, be attributed to any known clinical diagnosis. The fact that the signs or symptoms exhibited by the Veteran could conceivably be attributed to a known clinical diagnosis under other circumstances not presented in the particular Veteran's case does not preclude compensation under section 3.317. VAOPGCPREC 8-98.

In the case of claims based on undiagnosed illness under 38 U.S.C.A. § 1117; 38 C.F.R. § 3.317, unlike those for "direct service connection," there is no requirement that there be competent evidence of a nexus between the claimed illness and service. Gutierrez v. Principi, 19 Vet. App. at 8-9. Furthermore, lay persons are competent to report objective signs of illness. Id. 

A medically unexplained chronic multi-symptom illnesses is one defined by a cluster of signs or symptoms and specifically includes chronic fatigue syndrome, fibromyalgia, and functional gastrointestinal disorders (excluding structural gastrointestinal diseases), as well as any other illness that the Secretary determines meets the criteria in paragraph (a)(2)(ii) of this section for a medically unexplained chronic multi-symptom illness. Moreover, a medically unexplained chronic multi-symptom illness means a diagnosed illness without conclusive pathophysiology or etiology that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multi-symptom illnesses of partially understood etiology and pathophysiology will not be considered medically unexplained. 38 C.F.R. § 3.317 (a)(2)(ii) (2016).

 "Objective indications of chronic disability" include both "signs," in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. 38 C.F.R. §3.317 (a)(3) (2016). Signs or symptoms that may be manifestations of undiagnosed illness or medically unexplained chronic multi-symptom illness include, but are not limited to, the following: (1) fatigue; (2) signs or symptoms involving skin; (3) headache; (4) muscle pain; (5) joint pain; (6) neurologic signs or symptoms; (7) neuropsychological signs or symptoms; (8) signs or symptoms involving the respiratory system (upper or lower); (9) sleep disturbances; (10) gastrointestinal signs or symptoms; (11) cardiovascular signs or symptoms; (12) abnormal weight loss; and (13) menstrual disorders. 38 C.F.R. § 3.317 (b) (2016).

Compensation shall not be paid under 38 C.F.R. § 3.317 if: (1) the undiagnosed illness was not incurred during active service in the Southwest Asia theater of operations during the Persian Gulf War; or (2) the undiagnosed illness was caused by a supervening condition or event that occurred between most recent departure from service in the Southwest Asia theater of operations during the Persian Gulf War and the onset of the illness; or (3) the illness is the result of willful misconduct or the abuse of alcohol or drugs. 38 C.F.R. § 3.317 (a)(7)(i-iii).

While the Veteran has testified that he has suffered from fatigue as well as joint and muscle pain since approximately 2002 there are known clinical diagnoses to which these symptoms could be attributed. He suffers from PTSD with symptomatology including sleep disturbance that could result in fatigue. Furthermore, he suffers from multiple disorders of the joints including disorders of the knees, the cervical spine, and the thoracolumbar spine. 

The Veteran was provided a VA Gulf War Guidelines examination in November 2008. The VA examiner concluded that all symptoms, abnormal physical findings, and abnormal laboratory test results have been determined to be part of a known clinical diagnosis. However, this conclusion was not further explained as the VA examiner indicated a medical opinion was not requested. The Board remanded in April 2016 for an additional examination.

The Veteran was afforded additional examinations in June 2016. One examination indicated that the Veteran did not have fibromyalgia but that current symptoms are most likely related to residuals of t-cell lymphoma treatment and sleep apnea, Depression, Generalized Anxiety Disorder, chronic PTSD, Panic Disorder, restless leg syndrome, mitral valve insufficiency, Hydro nephrosis,
chronic pain syndrome, edema of lower legs, GERD, obesity, history of
substance abuse, and alcohol abuse. The Board notes that some of these disabilities are service-connected and some are not; there is no exact delineation of symptomatology between the many disabilities listed. The other examination contained inherent contradictions; indicating that the Veteran has chronic fatigue syndrome but then indicating that there was indication of such symptoms in the Veteran's medical records.

As such, the Board finds that VA examination report inadequately addressed the issue at hand and a new examination should be conducted. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (noting that once the Secretary undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, he must provide an adequate one); see also Daves v. Nicholson, 21 Vet. App. 46, 51 (2007), citing Green v. Derwinski, 1 Vet. App. 121, 123-124 (1991); Bowling v. Principi, 15 Vet. App. 1, 12 (2001) (emphasizing the Board's duty to return an inadequate examination report "if further evidence or clarification of the evidence ... is essential for a proper appellate decision"); see also 38 C.F.R. § 4.2 (2016) (noting that if the examination report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes). 

III. Left Knee

The Veteran was most recently afforded a VA knee examination in June 2016. However, the Board finds that the examination is inadequate. The examiner found that the Veteran had functional loss and/or functional impairment of the left knee. However, the examiner did not include in the report or discuss specific loss of range of motion due to the functional impairment. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011). In addition, the Court recently held 38 C.F.R. § 4.59 creates range of motion testing requirements with which VA must comply. Correia v. McDonald, 28 Vet. App. 158 (2016). 38 C.F.R. § 4.59 provides, "The joints involved should be tested for pain on both active and passive motion, in weight-bearing and non-weight-bearing and, if possible, with the range of the opposite undamaged joint." Therefore, a new VA examination is required to provide an adequate assessment of the current severity of the Veteran's service-connected left knee. The new VA examination should be conducted consistent with the Court's interpretation of 38 C.F.R. § 4.59 in Correia. 

Also, since the record reflects that the Veteran continues to receive VA treatment, updated VA treatment records should be obtained and associated with the claims file.

The Board's prior remands conferred on the Veteran the right to compliance with the remand orders, as a matter of law. See Stegall v. West, 11 Vet. App. 268, 271 (1998). However, as already explained herein, the Board's remand orders were not fully complied with. Thus, the AOJ is required to conduct the development requested by the Board in order for the Veteran's claim to be fully and fairly adjudicated. 

Accordingly, the case is REMANDED for the following action:

1. Obtain updated VA treatment records from the Orlando VA Medical Center, and all associated clinics, as well as any other VA facility identified by the Veteran or in the record, for the period of April 2016 to the present. 

2. After the records are associated with the claims file, schedule the Veteran for a VA joints examination to determine the nature and current level of severity of his service-connected left knee. All indicated studies, including radiological testing, should be conducted. The entire claims folder (i.e., both the paper claims file and any relevant medical records contained in VBMS and Virtual VA) must be made available to and reviewed by the examiner. 

The examiner must fully set forth all current complaints, pertinent clinical findings, and diagnoses. A complete medical history should be elicited. The examiner should undertake range of motion studies of the Veteran's knee and comment on the degree of disability due to functional losses such as pain, fatigue, and weakness. The joints should be tested for pain on both active and passive motion, in weight-bearing and non-weight-bearing. The examiner should provide an opinion concerning whether there would be additional limits on functional ability on repeated use or during flare-ups, and, if feasible, express this in terms of additional degrees of limitation of motion on repeated use or during flare-ups. If it is not feasible to determine without resort to speculation, the examiner must provide an explanation for why this is so.

The opinion provider should cite to the medical and competent lay evidence of record and fully explain the rationale for any opinions given. 

3. Obtain an opinion which addresses the possible relationship between the Veteran's gastrointestinal problems and his treatment for T-cell lymphoblastic lymphoma. All indicated evaluations, studies, and tests deemed necessary should be accomplished and all findings reported in detail. The Veteran's claims file must be made available to the examiner prior to the examination, and the examiner must review the entire claims file.

The examiner is requested to address the following: 

a. As to the diagnosed gastroparesis, is it more likely than not (i.e., probability greater than 50 percent), at least as likely as not (i.e., probability of 50 percent), or less likely than not (i.e., probability less than 50 percent), that the disorder is proximately due (caused by) to the Veteran's service connected T-cell lymphoblastic lymphoma, including treatment for that condition?

b. As to the diagnosed gastroparesis, if the answer to (a) is less likely than not (i.e., probability less than 50 percent), is it more likely than not (i.e., probability greater than 50 percent), at least as likely as not (i.e., probability of 50 percent), or less likely than not (i.e., probability less than 50 percent) that the disorder has been aggravated beyond its normal progression by the Veteran's service connected T-cell lymphoblastic lymphoma, including treatment for that condition?

The term "aggravation" refers to a chronic or permanent worsening of the underlying condition, as contrasted with mere temporary or intermittent flare-ups of associated symptoms that resolve with return to the baseline level of disability. So aggravation contemplates a permanent worsening of the condition above and beyond its natural progression.

4. Additionally, schedule the Veteran for an appropriate VA examination to address the nature and etiology of the Veteran's fatigue and joint and muscle pain. All indicated evaluations, studies, and tests deemed necessary should be accomplished and all findings reported in detail. The Veteran's claims file must be made available to the examiner prior to the examination, and the examiner must review the entire claims file in conjunction with the examination.

The examiner is requested to address the following: 

a. Undiagnosed Illness: Does the Veteran suffers from a disability manifested by fatigue and/or joint and muscle pain, which cannot, based on the facts of this Veteran's case, be attributed to any known clinical diagnosis, including his currently diagnosed PTSD or joint disorders?

b. Medically unexplained chronic multi-symptom illness: if the answer to (a) is no, does the Veteran's symptoms of fatigue and/or joint and muscle pain warrant a diagnosis of chronic fatigue syndrome, fibromyalgia, or other medically unexplained multi-symptom illness as defined by 38 C.F.R. § 3.317 (a)(2)(ii)?

c. Diagnosed Conditions: if the answer to (a) and (b) is no, then list all diagnosed conditions for which the fatigue and/or joint and muscle pain is attributable. Determine specific symptoms which are attributable to specific diagnoses, particularly service-connected disabilities.

d. For each diagnosis listed in response to subpart (c), is it more likely than not (i.e., probability greater than 50 percent), at least as likely as not (i.e., probability of 50 percent), or less likely than not (i.e., probability less than 50 percent), that it is etiologically related to the Veteran's active duty service and/or is secondary to or aggravated by a service-connected disability?

5. After completing the above, and any other development deemed necessary, readjudicate the Veteran's claims based on the entirety of the evidence. If the benefits sought on appeal are not granted to the Veteran's satisfaction, he and his representative should be provided with a Supplemental Statement of the Case. An appropriate period of time should be allowed for response.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).


These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
M. H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs