Citation Nr: 1602629 
Decision Date: 01/28/16 Archive Date: 02/05/16

DOCKET NO. 14-18 262 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to an initial rating for a right total knee replacement due to degenerative joint disease of the right knee with patellar bursitis and tendinosis in excess of 10 percent prior to February 20, 2009, in excess of 20 percent from February 20, 2009 until December 8, 2010, in excess of 30 percent from February 1, 2012 until August 23, 2012, in excess of 60 percent from August 23, 2012 until April 30, 2013, and in excess of 30 percent from July 1, 2014 onward, excluding the periods December 8, 2010 until February 1, 2012 and April 30, 2013 until July 1, 2014 as 100 percent evaluations were awarded during these time periods. 

2. Entitlement to an initial rating in excess of 20 percent, from October 26, 2009 until December 8, 2010, for limitation of extension, right knee.

3. Entitlement to an initial rating in excess of 10 percent, from October 26, 2009 until December 8, 2010, for limitation of flexion, right knee. 

4. Entitlement to an initial compensable evaluation for a scar, right knee, status post right total knee replacement.

5. Entitlement to a sciatic nerve condition, to include as secondary to right total knee replacement due to degenerative joint disease of the right knee with patellar bursitis and tendinosis.

6. Entitlement to a total disability rating based on individual unemployability due to service connected disability (TDIU).


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Dustin Ware, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1969 to March 1973.

This case comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio.

The Veteran testified before the Board at a June 2015 hearing in relation to his claim for entitlement to service connection for a sciatic nerve condition. A transcript of the hearing is of record.

In a November 2015 letter, the Board informed the Veteran that the Veterans Law Judge who conducted his June 2015 hearing was unavailable to participate in a decision in this appeal and that the Veteran had the right to another Board hearing, and provided the Veteran a form to request another Board hearing. The Veteran responded that he did not wish to appear at another Board hearing. See 38 C.F.R. §§ 19.3(b), 20.707.

The issues of entitlement to service connection for a sciatic nerve condition and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Prior to February 20, 2009, the Veteran's right knee condition is manifested by flexion of 140 degrees and extension of 0 degrees without ankylosis, recurrent subluxation or lateral instability, semilunar cartilage dislocation, or tibia and fibula impairment.

2. From February 20, 2009 until December 8, 2010, the Veteran's right knee condition is manifested by flexion of 80 degrees and extension of 0 degrees until March 9, 2010 and flexion of 45 degrees and extension of 18 degrees thereafter with weakness, stiffness, swelling, warmth, redness, a give-away feeling, and occasional locking a popping throughout the time period but no ankylosis, recurrent subluxation or lateral instability that is more than moderate, or tibia and fibula impairment.

3. From October 26, 2009 until December 8, 2010, the Veteran's right knee condition is manifested by flexion of 45 degrees and extension of 18 degrees thereafter with weakness, stiffness, swelling, warmth, redness, a give-away feeling, and occasional locking a popping.

4. From February 1, 2012 until August 23, 2012, following total knee replacement in December 2010, the Veteran's right knee disability is manifested by residuals consisting of intermediate degrees of residual weakness, pain, or limitation of motion; range of motion limited to, at worst, flexion of 105 degrees and extension of 0 degrees; without ankylosis or tibia and fibula impairment. 

5. From August 23, 2012 until April 30, 2013, the Veteran's right knee disability is manifested by knee pain.

6. From July 1, 2014 onward, the Veteran's right knee disability is manifested by pain and weakness not shown to be chronic, as opposed to intermittent, extension limited to 0 degrees, without ankylosis or tibia and fibula impairment. 

7. The Veteran's right total knee replacement resulted in a linear 21 to 24 centimeter scar that is neither painful nor unstable. 


CONCLUSIONS OF LAW

1. Prior to February 20, 2009, the criteria for a rating in excess of 10 percent for a right knee disability have not been met. 38 U.S.C.A. §§ 1155 (West 2014); 38 C.F.R. §§ 4.3, 4.14, 4.40, 4.71a, Diagnostic Codes 5003, 5010, 5256-5258, 5260-5262 (2015).

2. From February 20, 2009 until December 8, 2010, the criteria for a rating in excess of 20 percent for a right knee disability have not been met. 38 U.S.C.A. §§ 1155 (West 2014); 38 C.F.R. §§ 4.3, 4.14, 4.40, 4.71a, Diagnostic Codes 5003, 5010, 5256, 5257, 5262 (2015).

3. From October 26, 2009 until December 8, 2010, the criteria for a separate rating in excess of 10 percent for a right knee disability based on limitation of flexion have not been met. 38 U.S.C.A. §§ 1155 (West 2014); 38 C.F.R. §§ 4.3, 4.14, 4.40, 4.71a, Diagnostic Codes 5260 (2015).

4. From October 26, 2009 until December 8, 2010, the criteria for a separate rating in excess of 20 percent for a right knee disability based on limitation of extension have not been met. 38 U.S.C.A. §§ 1155 (West 2014); 38 C.F.R. §§ 4.3, 4.14, 4.40, 4.71a, Diagnostic Codes 5261 (2015).

5. From February 1, 2012 until August 23, 2012, the criteria for a rating in excess of 30 percent for a right knee disability have not been met. 38 U.S.C.A. §§ 1155 (West 2014); 38 C.F.R. §§ 4.3, 4.14, 4.40, 4.71a, Diagnostic Codes 5055, 5256, 5261, 5262 (2015).

6. From August 23, 2012 until April 30, 2013, the criteria for a rating in excess of 60 percent for a right knee disability have not been met. 38 U.S.C.A. §§ 1155 (West 2014); 38 C.F.R. §§ 4.3, 4.14, 4.40, 4.68, 4.71a, Diagnostic Code 5055 (2015).

7. From July 1, 2014 onward, the criteria for a rating in excess of 30 percent for a right knee disability have not been met. 38 U.S.C.A. §§ 1155 (West 2014); 38 C.F.R. §§ 4.3, 4.14, 4.40, 4.71a, Diagnostic Code 5055, 5256, 5261, 5262 (2015).

8. The criteria for an initial compensable rating for scar, right knee, status post right total knee replacement, have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.118, Diagnostic Codes 7800-7805 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

When VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). See also Quartuccio v. Principi, 16 Vet. App. 183 (2002); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In cases such as this, where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service connection claim has been more than substantiated, it has been proven, thereby rendering 38 U.S.C.A. § 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. Dingess v. Nicholson, 19 Vet. App. 473 (2006); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). The appellant bears the burden of demonstrating any prejudice from defective notice with respect to downstream elements. Goodwin v. Peake, 22 Vet. App. 128 (2008). There has been no allegation of such error in this case.

In light of the above, the Board finds that no useful purpose would be served by delaying appellate review to send out additional notice letters.

VA must also make reasonable efforts to assist the Veteran in obtaining evidence necessary to substantiate the claims for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claims. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2015).

Service treatment records are associated with claims file. Also, post-service VA and non-VA treatment records have also been associated with the claims file. The Veteran has not identified any additional records that should be obtained prior to a Board decision. Therefore, VA's duty to further assist the Veteran in locating additional records has been satisfied. See 38 U.S.C.A. § 5103A (d); see also 38 C.F.R. § 3.159 (c)(4) (2015); Wells v. Principi, 326 F.3d 1381 (Fed. Cir. 2003). The Veteran was afforded VA examinations in June 2008, April 2009, March 2010, December 2011, May 2014 with an addendum in June 2014, and April 2015. These VA examinations, in combination, are adequate for the purposes of evaluating the Veteran's disabilities, as they involved a review of the Veteran's pertinent medical history as well as a clinical evaluation of the Veteran, and provide adequate discussions of relevant symptomatology. See generally Barr v. Nicholson, 21 Vet. App. 303, 311 (2007).

In light of the foregoing, the Board is satisfied that all relevant facts have been adequately developed to the extent possible; no further assistance to the Veteran in developing the facts pertinent to the issue on appeal is required to comply with the duty to assist. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159.

Analysis

The Veteran contents that he is entitled to an increased rating for his service-connected right total knee replacement due to degenerative joint disease of the right knee with patellar bursitis and tendinosis as well as his service-connected scar, right knee, status post right total knee replacement.

I. Rating Schedule

A. Right Knee

Disability evaluations are determined by comparing a Veteran's present symptomatology with criteria set forth in the VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3. The Veteran's entire history is reviewed when making disability evaluations. See generally, 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995).

Evidence to be considered in the appeal of an initial assignment of a disability rating is not limited to that reflecting the then current severity of the disorder. Fenderson v. West, 12 Vet. App. 119 (1999). In cases where an initially assigned disability evaluation has been disagreed with, it is possible for a veteran to receive a staged rating; that is, be awarded separate percentage evaluations for separate periods based on the facts found during the appeal period. Fenderson at 126-28; see also Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. It is essential that the examination upon which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity or the like. 38 C.F.R. § 4.40 (2015). 

With respect to the joints, the factors of disability reside in reductions of their normal excursion of movements in different planes. Inquiry will be directed to these considerations: (a) less movement than normal (due to ankylosis, limitation or blocking, adhesions, tendon-tie-up, contracted scars, etc.); (b) more movement than normal (from flail joint, resections, nonunion of fracture, relaxation of ligaments, etc.); (c) weakened movement (due to muscle injury, disease or injury of peripheral nerves, divided or lengthened tendons, etc.); (d) excess fatigability; (e) incoordination, impaired ability to execute skilled movements smoothly; and (f) pain on movement, swelling, deformity or atrophy of disuse. Instability of station, disturbance of locomotion, interference with sitting, standing and weight-bearing are related considerations. 

Evidence of pain, weakened movement, excess fatigability, or incoordination must be considered in determining the level of associated functional loss, taking into account any part of the musculoskeletal system that becomes painful on use. 38 C.F.R. § 4.40 (2015); DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions regarding the avoidance of pyramiding do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare ups. 38 C.F.R. § 4.14 (2015). The provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45, however, should only be considered in conjunction with the diagnostic codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996). 

Under 38 C.F.R. § 4.59, painful motion is a factor to be considered with any form of arthritis; however, 38 C.F.R. § 4.59 is not limited to disabilities involving arthritis. See Burton v. Shinseki, 25 Vet. App. 1 (2011). The Court also has held that "pain itself does not rise to the level of functional loss as contemplated by VA regulations applicable to the musculoskeletal system." Mitchell v. Shinseki, 25 Vet. App. 32, 38 (2011). Rather, pain, may result in functional loss, but only if it limits the ability "to perform the normal working movements of the body with normal excursion, strength, speed, coordination[, or] endurance." Id., quoting 38 C.F.R. § 4.40.
 
The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for that joint. 38 C.F.R. § 4.59 (2015).

The Veteran's right total knee replacement due to degenerative joint disease of the right knee with patellar bursitis and tendinosis was initially rated 10 percent effective February 12, 2008. That rating was increased to 20 percent effective February 20, 2009. The Veteran was then granted a 100 percent from December 8, 2010 until February 1, 2011 pursuant to 38 C.F.R. § 4.30. A 100 percent rating was continued for another year from February 1, 2011 until February 1, 2012 pursuant to 38 C.F.R. § 4.71a, Diagnostic Code 5055. Effective February 1, 2012 a rating of 30 percent was assigned pursuant to the same diagnostic code. Effective August 23, 2012 a 60 percent rating was assigned again pursuant to the same diagnostic code. Effective April 30, 2013 a 100 percent rating was again assigned pursuant to 38 C.F.R. § 4.30. A 100 percent rating was again continued for the year following, from July 1, 2013 until July 1, 2014 pursuant to 38 C.F.R. § 4.71a, Diagnostic Code 5055. Finally, a 30 percent rating was assigned effective July 1, 2014.

Prior to December 8, 2010 the Veteran right knee disability was rated pursuant to Diagnostic Code 5010-5257 with separate ratings of 10 percent for limitation of flexion being assigned pursuant to Diagnostic Code 5260 and 20 percent for limitation of extension being assigned pursuant to Diagnostic Code 5261, both from October 26, 2009 until December 8, 2010. From December 8, 2010 the Veteran's knee disability has been rated pursuant to Diagnostic Code 5055. That rating includes consideration of the Veteran's flexion and extension symptomatology. Hyphenated diagnostic codes are used when a rating for a particular disability under one diagnostic code is based upon rating of the residuals of that disability under another diagnostic code. 38 C.F.R. § 4.27 (2015). The first four numbers reflects the diagnosed disability. The second four numbers after the hyphen identifies the criteria used to evaluate that disability. 

In considering the applicability of other Diagnostic Codes, the Board finds that Diagnostic Codes 5256 (ankylosis of the knee), 5259 (symptomatic removal of semilunar cartilage), 5262 (tibia and fibula impairment), and 5263 (genu recurvatum) are not applicable in this instance, as the medical evidence does not show that the Veteran has any of those conditions. 38 C.F.R. § 4.71a, Diagnostic Codes 5256, 5259, 5263 (2015).

The Veteran is currently rated pursuant to Diagnostic Code 5055. Under this diagnostic code a 100 percent evaluation may be assigned for knee replacement (prosthesis) for one year following implantation of prosthesis. Thereafter, a 60 percent evaluation may be assigned with chronic residuals consisting of severe painful motion or weakness in the affected extremity. With intermediate degrees of residual weakness, pain or limitation of motion, rate by analogy to diagnostic codes 5256, 5261, or 5262. The minimum rating is 30 percent. 38 C.F.R. § 4.71a, Diagnostic Code 5055.

Diagnostic Code 5010, for rating traumatic arthritis, directs that the evaluation of arthritis be conducted under Diagnostic Code 5003 that states degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010. 

Diagnostic Code 5257 evaluates recurrent subluxation or lateral instability of a knee, and assigns a 10 percent rating for a "slight" impairment, 20 percent rating for a "moderate" impairment, and 30 percent rating for a "severe" impairment. 38 C.F.R. § 4.71a, Diagnostic Code 5257. Diagnostic Code 5257 is not predicated on loss of range of motion. See Johnson v. Brown, 9 Vet. App. 7, 11 (1996). 

Diagnostic Code 5258 directs that when semilunar cartilage is dislocated with frequent episodes of locking, pain, and effusion into the joint a 20 percent rating is warranted. 38 C.F.R. § 4.71a, Diagnostic Code 5258.

Under Diagnostic Code 5260, limitation of flexion of the leg, a noncompensable rating is assigned when flexion is limited to 60 degrees; a 10 percent rating is assigned when flexion is limited to 45 degrees; a 20 percent rating is assigned when flexion is limited to 30 degrees; and a 30 percent rating is assigned when flexion is limited to 15 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5260. 

Under Diagnostic Code 5261, limitation of extension of the leg, a noncompensable rating is assigned when extension is limited to 5 degrees; a 10 percent rating is assigned when extension is limited to 10 degrees; a 20 percent rating is assigned when extension is limited to 15 degrees; a 30 percent rating is assigned when extension is limited to 20 degrees; a 40 percent rating is warranted for extension limited to 30 degrees; and a 50 percent rating is assigned when extension is limited to 45 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5261. 

The standardized description of joint measurements is provided in Plate II under 38 C.F.R. § 4.71a (2015). For VA purposes, normal extension and flexion of the knee is from 0 to 140 degrees. 38 C.F.R. § 4.71a, Plate II (2015).

The Board notes that separate ratings under Diagnostic Code 5260 and Diagnostic Code 5261 may be assigned for disability of the same knee joint. See VAOPGCPREC 9-2004. Additionally, VAOPGCPREC 23-97 held that a claimant who has both arthritis and instability of the knee may receive two separate disability ratings under Diagnostic Codes 5003-5010 and Diagnostic Code 5257 (or under Diagnostic Codes 5258-9) without violating the prohibition of pyramiding of ratings. It was specified that, for a knee disorder already rated under Diagnostic Code 5257, a claimant would have additional disability justifying a separate rating if there is limitation of motion under Diagnostic Code 5260 or Diagnostic Code 5261. 

Turning to the evidence of record, the Veteran was provided a VA examination in June 2008. The examination report indicates range of motion of the right knee joint as flexion of 140 degrees and extension 0 degrees limited by stiffness within the knee. There was no additional limitation of motion upon repetitive use testing. There was also no evidence of edema, effusion, swelling, redness, heat, erythema, abnormal movement, ankylosis, or guarding. Examination did reveal tenderness to palpation over the patella with a slight depression in the middle of the anterior aspect of the patella but no tenderness along the join line. Anterior drawer test and McMurray's test were negative. At the time of the examination the Veteran reported intermittent pain since the 1970s to 1980s with recent increase in frequency and severity, rated at an eight on a scale of one to ten, associated with weakness, stiffness, swelling, and popping sensations. He also reported a burning sensation underneath the patella. 

Upon VA examination in April 2009 there was mild popliteal effusion as well as a suprapatellar effusion. Apprehension test was negative but there was patellar grinding. Both medical and lateral McMurray's tests were positive. Drawer sign was negative but triggered pain. The Veteran could fully extend the knee with flexion of approximately 80 degrees. At the time of the examination the Veteran reported pain of ten on a ten point scale. He also complained of weakness, stiffness, swelling, warmth, redness, a give-away feeling, and occasional locking a popping.

In an October 2009 statement the Veteran indicated that he was having problems with his right knee including giving way causing falls, decreased range of motion, limited mobility, swelling, and pain. 

VA examination of the Veteran right knee in March 2010 revealed deformity, giving way, instability, pain, stiffness, weakness, decreased speed of joint motion, constant effusion, warmth, swelling, tenderness, and crepitus. Flare-ups were reported to occur weekly in the winter, last three to seven days, and described as severe. The Veteran was limited to standing no more than a few minutes and was unable to walk more than a few yards. He showed antalgic gait and evidence of abnormal weight bearing. Range of motion was flexion to 45 degrees and extension was noted to be "normal (0) degrees" but then a further notation said "extension is limited by 18 degrees." There was no objective evidence of pain with active motion or following repetitive motion. Also, there was no additional limitation after repetitive use testing. The right knee was reported to impact occupation activities through lack of stamina, weakens, fatigue, decreased strength, and pain with the Veteran being unable to do any lifting, pushing, or pulling activities. 

Another VA examination was performed in December 2011. The examination report noted that flare-ups occur causing swelling, stiffness, pain, and weakness. Range of motion was flexion of 140 degrees or greater with objective evidence of painful motion beginning at 105 degrees and extension of 0 degrees with no objective evidence of painful motion. Repetitive use testing did not result in additional loss of range of motion. The Veteran had functional loss and/or functional impairment of the right knee including weakened movement; pain on movement; disturbance of locomotion; and interference with sitting, standing, and weight-bearing. Tenderness or pain on palpation of the joint like or soft tissue was detected. Muscle strength for right knee flexion and extension was 4/5. Joint stability was normal on all tests. There was no evidence of a history of recurrent patellar subluxation or dislocation. A history of frequent periods of joint locking i.e. a semilunar cartilage condition was reported. The examination report notes the Veteran's 2010 total knee joint replacement and indicates residuals manifested in the form of intermediate degrees of residual weakness, pain, or limitation of motion. Use of a cane was noted. It was observed that the Veteran was forced to retire from driving a bus due to knee pain and limitation. 

Again VA examination was performed in May 2014. The examiner noted flare-ups but indicated that it was not practical or desirable to express the effect on limitation of motion because it could not be objectively quantified. Range of motion was flexion of 90 degrees with no objective evidence of painful motion and extension of 0 degrees also with no objective evidence of painful motion. Repetitive use testing revealed no additional limitation of motion. The Veteran had functional loss and/or functional impairment of the right knee including weakened movement; pain on movement; swelling; instability of station; disturbance of locomotion; and interference with sitting, standing, and weight-bearing. There was tenderness or pain to palpation for joint line or soft tissue. The Veteran was reported to use braces and a cane occasionally. The functional impact of the right knee on ability to work was limited prolonged walking, carrying/lifting, and bending/squatting. There was no apparent limitation to sedentary employment. All joint stability tests returned normal results. There was no evidence of a history of recurrent patellar subluxation or dislocation. At the time of the examination the Veteran reported pain of ten on a ten point scale with weakness and instability. Extending the knee out lowers pain to five. 

A June 2014 addendum to the previous examination noted that "pain and weakness appear to significantly limit functional ability during flare-ups in limited prolonged walking/going down stairs, carrying heavy items, and repetitive bending. However, it is not practical or feasible to express additional limitation in terms of additional ROM loss due to 'pain on use or during flare-ups' as this cannot be objectively quantified."

The Veteran's most recent VA examination of the right knee occurred on April 2015. At the time of the examination the Veteran reported flare-ups and having functional loss or functional impairment of the right knee. Range of motion was flexion of 90 degrees and extension of 0 degrees. There was no additional functional loss or range of motion observed after repetitive use testing. Pain, weakness, fatigability, or incoordination during flare-ups was reported to cause an additional 10 degrees of limitation of flexion. The abnormal range of motion itself contributed to functional loss. Pain in flexion was noted to cause functional loss. There was evidence of pain on weight bearing, localized tenderness or pain on palpation of the joint or associated soft tissue, and crepitus. The VA examiner reported that the examination was medically consistent with the Veteran's statements describing functional loss with repetitive use over time and during flare-ups. Both forward flexion and extension muscle strength was reported to be a 4/5. There was no ankylosis of the right knee. All joint stability tests results were normal. The VA examiner noted the Veteran's total knee joint replacements and described residuals of pain and swelling. The examiner specifically did not indicate chronic residuals consisting of severe painful motion or weakness. The Veteran was reported to use braces and a cane constantly. The noted functional impact of the right knee condition was pain and swelling with minimal standing and walking.

Also of record are VA and private treatment records related to the Veteran's right knee condition. These records do not paint a substantively different disability picture from that shown by the VA examination reports during the respective time periods covered. These records do show the Veteran's right total knee replacements in December 2010 and April 2013. Additionally, these records support the Veteran contention that he fell in late 2009. 

Having considered the evidence of record, the Board will now turn to determining whether a higher rating is warranted for each time period in question. Prior to February 20, 2009, the evidence of record does not show a rating in excess of 10 percent is warranted. The June 2009 examination revealed flexion of 140 degree and extension of 0 degrees. Such motion does not warrant a higher rating. The Board acknowledges the Veteran's report of pain; however, the pain did not result in further limitation of motion that would warrant a rating in excess of 10 percent. Additionally, during this period there was no evidence of ankylosis, recurrent subluxation or lateral instability, semilunar cartilage dislocation, or tibia and fibula impairment. 

From February 20, 2009 to December 8, 2010 the evidence of record does not show a rating in excess of 20 percent is warranted. McMurray tests performed as part of the April 2009 VA examination were positive but the Rating Schedule provides for no more than a 20 percent for dislocated semilunar cartilage with frequent episodes of locking, pain, and effusion into the joint. See 38 C.F.R. § 4.71a, Diagnostic Code 5258. In regards to instability, during this time period the Veteran had a fall that he attributes to his right knee giving way. While this indicates the Veteran has problems with recurrent subluxation or lateral instability the Board finds that intermittent feelings of giving way with rare falls do not warrant being considered severe and at best would be moderate. 38 C.F.R. § 4.71a, Diagnostic Code 5257. Moreover, during this time period there is no evidence of ankylosis or tibial and fibula impairment. The April 2009 VA examination also revealed flexion of 80 degrees and full extension. Pain was noted but it was not shown to limit motion to an extent that a separate compensable rating is warranted. Similarly, the Board acknowledges the Veteran's complaints of weakness, stiffness, swelling, warmth, redness, a give-away feeling, and occasional locking and popping at the time of the examination and later in an October 2009 statement. Nevertheless, these problems do not appear to manifest in limitation of motion or any other compilation that would warrant a separate rating. 

Alternatively, the March 2010 VA examination reveals motion limited to flexion of 45 degrees and extension of 18 degrees warranting 10 degree and 20 degrees ratings respectively. However, such ratings have already been granted for flexion and extension of the right knee during the time period of October 26, 2009 until December 8, 2010 the date of the Veteran's first award of 100 percent pursuant to 38 C.F.R. § 4.30. At the time of the March 2010 examination, the Veteran did report severe flare-ups during the winter. However, despite the Veteran description of the flare-ups as severe the Board finds a rating in excess of those already assigned are not warranted given the other evidence in the examination report such as there being no additional limitation of motion after repetitive use testing. 

From February 1, 2012 until August 23, 2012, the evidence of record does not show a rating in excess of 30 percent is warranted. A VA examination was not conducted during the period but a December 2011 VA examination was completed just prior. This examination was also the first to occur following the Veteran first total right knee replacement in December 2010. For the higher rating of 60 percent under Diagnostic Code 5055 pertaining to knee replacements there needs to be evidence of a disability picture more nearly approximating chronic residuals consisting of severe painful motion or weakness in the affected extremity. However, the December 2011 VA examiner described residuals consisting of intermediate degrees of residual weakness, pain, or limitation of motion. Such knee replacement residuals do not warrant a rating in excess of 30 percent. Furthermore, the same examination showed motion limited to, accounting for pain on motion, at worst, flexion of 105 degrees and extension of 0 degrees. Neither range of motion warrants a rating in excess of 30 percent. Also, the examination revealed no evidence of ankylosis or tibia and fibula impairment.
From August 23, 2012 until April 30, 2013, the evidence of record does not show a rating in excess of 60 percent is warranted. There is no basis for a higher rating during this period. Because more than one year has elapsed since the first right knee replacement, this is the maximum schedular evaluation that can be assigned. See Diagnostic Code 5055. The Board has also considered whether any other Diagnostic Code would provide a basis for a higher rating. The maximum evaluation for ankylosis of the knee is 60 percent. The highest rating for amputation in the middle or lower third of the thigh is 60 percent. The combined ratings for disabilities of an extremity shall not exceed the rating for the amputation at the elective level were amputation to be performed. 38 C.F.R. § 4.68 (2015). Thus, the highest evaluation that may be assigned under the amputation rule, for the knee, is 60 percent. 

From July 1, 2014 onward, the evidence of record does not show a rating in excess of 30 percent is warranted. Again, for the higher rating of 60 percent under Diagnostic Code 5055 pertaining to knee replacements there needs to be evidence of a disability picture more nearly approximating chronic residuals consisting of severe painful motion or weakness in the affected extremity. At the May 2014 VA examination the Veteran reported pain rated as ten out of ten. The examiner noted functional impairment included weakened movement and pain on movement. Still, there was no objective evidence of painful motion. The June 2014 addendum stated that pain and weakness appear to significantly limit functional ability during flare-ups. The April 2015 noted the Veteran's two total knee replacements and indicated residuals included pain and swelling. On the examination report the VA examiner was specifically provided the opportunity to indicate chronic residuals consisting of severe painful motion or weakness in the affected extremity but chose not to. The Board finds the VA medical examiners medical expertise makes their opinion highly probative of the issue. Therefore, though some painful motion and weakness has been noted since the most recent total knee replacement the Board determines a rating of 60 percent is not warranted for chronic severe painful motion or weakness.

As to other possibly applicable diagnostic codes that provide for a rating in excess of 30 percent, from July 1, 2014 onward the Veteran has not been shown to suffer from ankylosis, extension limited to 30 degrees or more, or tibial and fibula impairment. 

In conclusion, the preponderance of the evidence is against a higher rating for anytime period here under appeal. Prior to the Veteran first knee surgery limitation of flexion, extension, or other problems associated with the knee injury do not evidence a condition warranting a rating in excess of those already assigned. Between the first total right knee replacement and the second and the time thereafter, the Board finds the evidence of record does not show a disability picture more nearly approximating chronic residuals consisting of severe pain or weakness. Furthermore, during the same time period other symptomatology such as limitation of flexion, extension, ankylosis, or tibia or fibula impairment is not shown or not shown to such a degree that a higher rating is warranted. Therefore, a higher rating for anytime period here under appeal is not warranted.

B. Scars

The Veteran requests a compensable rating for a right knee scar. This scar is associated with the Veteran's service-connected right total knee replacement due to degenerative joint disease of the right knee with patellar bursitis and tendinosis. The Veteran's right knee scar is evaluated as noncompensable under 38 C.F.R. § 4.118, Diagnostic Code 7805, which evaluates scars and symptomatology that are not covered by diagnostic codes 7800 through 7804. Diagnostic Code 7805 instructed that any disabling effect not considered in a rating provided under diagnostic codes 7800 through 7804 should be evaluated under an appropriate diagnostic code. 

The Veteran was provided an examination of his scar in December 2011. The VA examiner described the scar as a 24 centimeter linear scar. It was reported to not be painful or unstable. The scar was observed to have no impact on the Veteran's functioning. 

The May 2014 VA examiner, who examined the Veteran's knee, noted a "stable and nontender linear scar measuring 21 cm." 
Another examination of the Veteran's scar was provided in April 2015. This examiner also reported a 24 centimeter linear scar that was neither painful nor unstable. The scar was observed to have no impact on the Veteran's functioning. 

In a June 2012 Notice of Disagreement the Veteran refers to his scar as painful. 

Diagnostic Code 7804 does provide for ratings based on one or more scars that are unstable or painful. 38 C.F.R. § 4.118, Diagnostic Code 7804. Nevertheless, while the Veteran has referred to his scar as being painful repeated VA examination has not found objective evidence of a painful scar. The symptomatology of the Veteran's right total knee replacement due to degenerative joint disease of the right knee with patellar bursitis and tendinosis includes pain. For this reason the Board finds the VA examiner's opinions on whether the scar is painful to be more probative as their medical training makes them better equipped to determine the etiology of any pain in the area of the right knee scar. 

Moreover, Diagnostic Code 7800 applies to scars of the head, face, or neck and Diagnostic Codes 7801 and 7802 apply to nonlinear scars. The Veteran's scar is in the area of the right knee and is linear making these diagnostic codes inapplicable. 38 C.F.R. § 4.118, Diagnostic Codes 7800-7802. Finally, a review of the record does not reveal other disabling effects due to the right knee scar; therefore, a rating is not warranted under another diagnostic code. 38 C.F.R. § 4.118, Diagnostic Code 7805.

As such, a compensable rating is not warranted for the scar, right knee, status post right total knee replacement, at any point during the appeals period. 

C. Extraschedular Consideration

The Board also has considered whether the Veteran is entitled to a greater level of compensation on an extraschedular basis in regards to both his right knee disability and related scar. Ordinarily, the VA Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993).
In these exceptional or unusual cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court of Appeals for Veterans Claims (Court) has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009).

With respect to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular evaluations for the service-connected disabilities are inadequate. A comparison between the level of severity and symptomatology of the Veteran's right knee and scar disabilities and the established criteria found in the rating schedule for these disabilities show that the rating criteria reasonably describe the Veteran's disability level and symptomatology. Specifically, the Rating Schedule provided for ratings based on the frequency and severity of limitation of motion of the knee, including accounting for limitation caused by pain, as well as ratings based on instability of the knee and other common knee disability symptomatology. The Veteran has not alleged or exhibited right knee symptomatology so far outside the norm that use of the Rating Schedule is inadequate. In regards to the scar, the Rating Schedule provides for ratings based on common scar symptomatology but also provides a catch all Diagnostic Code 7805 providing for the rating of symptomatology not covered by the other diagnostic codes pertaining to scars. Such a catch all diagnostic code ensures that all the Veteran's scar symptomatology is considered by the Rating Schedule.

As the first prong of Thun has not been satisfied, the Board therefore has determined that referral of this case for extraschedular consideration pursuant to 38 C.F.R. 3.321(b)(1) is not warranted.


ORDER

Prior to February 20, 2009, a rating in excess of 10 percent for a right knee disability is denied.

From February 20, 2009 until December 8, 2010, a rating in excess of 20 percent for a right knee disability is denied.

From October 26, 2009 until December 8, 2010, a separate rating in excess of 10 percent for a right knee disability based on limitation of flexion is denied. 

From October 26, 2009 until December 8, 2010, a separate rating in excess of 20 percent for a right knee disability based on limitation of extension is denied. 

From February 1, 2012 until August 23, 2012, a rating in excess of 30 percent for a right knee disability is denied.

From August 23, 2012 until April 30, 2013, a rating in excess of 60 percent for a right knee disability is denied.

From July 1, 2014 onward, a rating in excess of 30 percent for a right knee disability is denied.

An initial compensable rating for the scar, right knee, status post right total knee replacement, is denied.


REMAND

I. Service Connection

The Veteran claims entitlement to service connection for sciatic nerve condition, to include as secondary to right total knee replacement due to degenerative joint disease of the right knee with patellar bursitis and tendinosis. 

In regards to this claim, the Veteran was provided a VA examination in May 2011. The VA examiner diagnosed sciatica left lower extremity then opined "[t]his started before the total knee replacement. Veteran has arthritis of multiple joints including knees, hands and thoracic spine. Osteoarthritis is a generalized disease process which affects multiple joints. Considering all these the left sciatica is less likely as not related to the service connected arthritis of right knee and knee replacement." 

Establishing entitlement to service-connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. See 38 C.F.R. § 3.310 (2014); see also Allen v. Brown, 7 Vet. App. 439 (1995). 

Both the causation and aggravation prongs must be discussed in order for the opinion to be adequate. Allen, 7 Vet. App. 439. An opinion that a disability is not related to or associated with another disability is not adequate to address the aggravation factor. Id. at 449. 

Therefore, the Board finds it necessary that the VA examiner provide an addendum opinion addressing whether the Veteran's sciatic nerve condition of the left lower extremity is disability aggravated by the Veteran's right knee disability. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (noting that once the Secretary undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, he must provide an adequate one); see also Daves v. Nicholson, 21 Vet. App. 46, 51 (2007), citing Green v. Derwinski, 1 Vet. App. 121, 123-124 (1991); Bowling v. Principi, 15 Vet. App. 1, 12 (2001) (emphasizing the Board's duty to return an inadequate examination report "if further evidence or clarification of the evidence ... is essential for a proper appellate decision"); see also 38 C.F.R. § 4.2 (2015) (noting that if the examination report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes). 


II. TDIU

With regard to the issue of entitlement to a TDIU, the Board finds that this claim is inextricably intertwined with the Veteran's pending claim for entitlement to service connection for a sciatic nerve condition, as the resolution of that issue might have bearing upon the Veteran's claim for a TDIU. The appropriate remedy where a pending claim is inextricably intertwined with a claim currently on appeal is to defer adjudication of the claim on appeal pending the adjudication of the inextricably intertwined claim. Harris v. Derwinski, 1 Vet. App. 180 (1991).

Accordingly, the case is REMANDED for the following action:

1. Return the claims file to the provider of the May 2011 opinion, for an addendum opinion. If unavailable, the claims file should be forwarded to another VA examiner. If it is determined an additional examination of the Veteran is necessary, one is to be arranged. The entire claims file must be reviewed by the examiner in conjunction with the examination. 

The examiner is requested to address the following:

Is it more likely than not (i.e., probability greater than 50 percent), at least as likely as not (i.e., probability of 50 percent), or less likely than not (i.e., probability less than 50 percent) that the Veteran's sciatic nerve condition of the left lower extremity has been aggravated beyond its normal progression by his service-connected right knee disability? 

Note: In answering, please address the Veteran's contention that his right knee disability caused a fall that resulted in an aggravation of his sciatic nerve condition. 

The term "aggravation" refers to a chronic or permanent worsening of the underlying condition, as contrasted with mere temporary or intermittent flare-ups of associated symptoms that resolve with return to the baseline level of disability. So aggravation contemplates a permanent worsening of the condition above and beyond its natural progression.

The examiner is requested to provide a complete rationale for any opinion expressed based on the examiner's clinical experience, medical expertise, and established medical principles. If an opinion cannot be made without resort to speculation, the examiner should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made. 

2. After completing the above, and any other development deemed necessary, readjudicate the Veteran's claim based on the entirety of the evidence. If the benefits sought on appeal are not granted to the appellant's satisfaction, he and his representative should be provided with a Supplemental Statement of the Case. An appropriate period of time should be allowed for response.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 
action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
MILO H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs